367 F.3d 123
 E. ARMATA, INC., Finest Fruits, Inc., L & P Fruit Corp. and Ven-Co Produce, Inc., Plaintiffs-Appellants,
Top Banana Co., Plaintiff,
v.
KOREA COMMERCIAL BANK OF NEW YORK, Defendant-Third-Party-Plaintiff-Appellee,
David Lee, d/b/a David Lee Produce Service Corp., Defendant,
v.
Koam Produce, Inc., Leeloi Industries, Inc., Kleinman & Hochbreg, Inc., Krisp-Pak Sales Inc., J & J Produce and DM Rothman Product Co., Inc., Third-Party Defendants.
 No. 03-7038.
 United States Court of Appeals, Second Circuit.
 Argued: September 8, 2003.
 Decided: March 12, 2004.
 Amended: April 29, 2004.
 
 COPYRIGHT MATERIAL OMITTED Leonard Kreinces (Howard S. Rosenberg, on the brief), Kreinces & Rosenberg, Westbury, NY, for Plaintiffs-Appellants E. Armata, Inc., Finest Fruits, Inc., L & P Fruit Corp, and Ven-Co Produce, Inc.
 Christoph C. Heisenberg, Winston & Strawn, New York, NY, for Defendant-Appellee Korea Commercial Bank of New York.
 Before: VAN GRAAFEILAND, McLAUGHLIN and CABRANES, Circuit Judges.
 JOSÉ A. CABRANES, Circuit Judge.
 
 
 1
 The principal question presented by this appeal is whether, under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., a bank is liable to the beneficiaries of a PACA trust for receipt of funds in breach of the trust where, having extended revolving overdraft privileges to a produce dealer covered by PACA, the bank routinely applied deposited PACA funds to reduce the negative balance in the produce dealer's overdrawn account.
 
 
 2
 We consider here an appeal from a December 30, 2002 judgment of the United States District Court for the Southern District of New York (Allen G. Schwartz, Judge) holding defendant bank liable under PACA for receipt of funds in breach of a PACA trust, and awarding damages to plaintiff produce suppliers in the amount of $5,876.44.
 
 
 3
 Under PACA, a produce dealer's proceeds from the sale of produce are subject to a PACA trust, which the dealer is personally responsible for maintaining as trustee. See 7 U.S.C. § 499e(c); 7 C.F.R § 46.46. The beneficiaries of the PACA trust are those produce suppliers from whom the produce dealer has purchased perishable agricultural commodities ("sellers" or "PACA creditors"). See 7 U.S.C. § 499e(c); 7 C.F.R. § 46.46. PACA thereby prevents produce dealers from providing non-produce-supplier creditors with security interests in their receivables superior to the claims of their produce-supplier creditors, by creating a trust for the benefit of only those creditors that are produce suppliers. See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc., 67 F.3d 1063, 1067 (2d Cir.1995). For a more detailed explanation of the PACA system, see our recent opinion in American Banana Co. v. Republic Nat'l Bank, 362 F.3d 33 (2d Cir.2004).
 
 BACKGROUND
 I. Factual History[1]
 
 4
 During the trust period relevant to plaintiffs' claims, which the parties stipulate commenced on February 2, 1998, defendant-appellee Korea Commercial Bank of New York ("KCB" or "bank") extended revolving overdraft privileges to defendant, produce dealer David Lee Produce Service Corporation ("DLPS"), which is not a party to this appeal, in the amount of $90,000. By the terms of the agreement between KCB and DLPS, the bank would honor checks written on DLPS's checking account in amounts exceeding DLPS's available funds,[2] with the expectation that DLPS would regularly make deposits to offset the negative balance. This revolving line of credit was not secured by DLPS's receivables from the sale of produce, which would constitute a violation of PACA, but instead by DLPS's business assets, as well as personal guarantees of DLPS's principal, David Lee, and a mortgage on Lee's home. DLPS regularly wrote checks in excess of its available funds, and KCB routinely honored them until, in November 1998, KCB terminated DLPS's overdraft privileges by converting the line of credit into a commercial loan to DLPS in the amount of $85,000.
 
 
 5
 DLPS deposited approximately 2 million dollars into its KCB account during the relevant trust period, nearly all of which constituted proceeds from the sale of produce, and was thus subject to a PACA trust for the benefit of DLPS's PACA creditors.[3] The vast majority of the funds disbursed from DLPS's account were payments to PACA creditors, including plaintiffs, with the exception of $21,161.96 that DLPS paid to non-PACA creditors (not including KCB), and $18,390.09 that KCB retained for fees and interest associated with DLPS's account.[4] When DLPS ceased operations in December 1998, it owed plaintiffs, all PACA creditors, a total of $650,451.95, and it had failed to make payment to any PACA creditor since August 14, 1998.
 
 II. Procedural History
 
 6
 Plaintiffs filed suit against KCB in the District Court on March 24, 1999, alleging that the bank's receipt of funds subject to a PACA trust and use of those funds to offset DLPS's negative balance constituted receipt of funds in breach of a PACA trust. Plaintiffs claim that KCB is liable for satisfying the claims of PACA creditors who were the beneficiaries of the PACA trust up to the full amount DLPS deposited in its checking account at KCB. Accordingly, they argue that KCB is liable to them for the full amount of DLPS's unsatisfied debt to them, or $650,451.95, plus interest.
 
 
 7
 The District Court's opinion of December 30, 2002, relied on its earlier opinion, American Banana Co. v. Republic National Bank, No. 99 Civ. 1330(AGS), slip op. at 13 (S.D.N.Y. Aug. 7, 2002) ("American Banana (S.D.N.Y.)"), which examined a similar arrangement between a produce dealer and a bank extending overdraft privileges, as well as on the Ninth Circuit's decision in Boulder Fruit Express & Heger Organic Farm Sales v. Transportation Factoring, Inc., 251 F.3d 1268, 1272 (9th Cir.2001), to hold that KCB's liability under PACA was significantly narrower than alleged by plaintiffs. See E. Armata, Inc. v. David Lee's Produce Service Corp., 2002 WL 31834451, slip op. at 10 (S.D.N.Y. Dec. 30, 2002) ("E.Armata"). Specifically, the District Court held that KCB could not be liable for any amount deposited by DLPS that was ultimately paid to PACA creditors. Id. Because the vast majority of the funds at issue in this case were ultimately disbursed to PACA creditors, including plaintiffs, the District Court held that KCB's liability was limited to (1) the $21,161.96 that DLPS paid to non-PACA creditors (not including KCB), and (2) $18,390.09 that KCB retained for fees and interest associated with DLPS's account, or a total of $39,552.05. Id. at 10-11.
 
 
 8
 The District Court then evaluated several defenses to liability offered by KCB, including an argument that it was a "bona fide purchaser" with respect to trust funds it received from DLPS. Id. at 11-12 (citing Restatement (Second) of Trusts § 284(1) (1959), which provides that "[i]f the trustee in breach of trust transfers trust property to ... a person who takes for value and without notice of the breach of trust, and who is not knowingly taking part in an illegal transaction, the latter holds the interest so transferred or created free of the trust, and is under no liability to the beneficiary"). Accepting the bank's argument that it was a "bona fide purchaser" with respect to its receipt of trust funds through October 1, 1998, the District Court further limited KCB's liability to those payments disbursed to non-PACA merchants (including KCB through fees and interest) after October 1, 1998, or $4,320.92. See E. Armata, slip op. at 12.[5]
 
 DISCUSSION
 I. PACA Trusts
 
 9
 PACA protects growers and suppliers of perishable agricultural commodities — the so-called PACA creditors — by establishing a trust for their benefit from the proceeds of the ultimate sale of such commodities by "commission merchant[s], dealer[s], or broker[s]":
 
 
 10
 Perishable agricultural commodities received by a commission merchant, dealer, or broker ... and any receivables or proceeds from the sale of such commodities ... shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received....
 
 
 11
 7 U.S.C. § 499e(c)(2) (emphasis added). We held in Endico Potatoes that "[t]his provision imposes a `non-segregated floating trust' on the commodities and their derivatives, and permits the commingling of trust assets without defeating the trust." Endico Potatoes, 67 F.3d at 1067. PACA therefore requires each "commission merchant, dealer, or broker" (for our purposes, "dealers" or "PACA trustees"), to hold in trust his income from the sale of such commodities until all his PACA creditors have been paid, but does not require him to maintain such assets separately from other assets. Id. A dealer is responsible to the trust's beneficiaries — his unpaid PACA creditors — for maintaining the trust. 7 C.F.R. § 46.46(d).[6] The trust provides PACA creditors with "a right to recover against the purchasers superior to all creditors, including secured creditors." Endico Potatoes, 67 F.3d at 1067.
 
 
 12
 PACA does not explicitly assign to third parties, such as banks, any responsibility for preserving a PACA trust. Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir.1998). However, general trust law applies to PACA trusts. Id. (citing Endico Potatoes, 67 F.3d at 1067), cited in American Banana, 362 F.3d at 41. Accordingly, we turn to general trust principles to determine the circumstances, if any, under which a bank that accepts trust proceeds as deposits may be liable to PACA-trust beneficiaries for receipt of funds in breach of that trust.
 
 
 13
 As we noted recently in American Banana, under general trust principles, "a third party such as [a bank in KCB's circumstances] cannot be liable for receiving funds in breach of a PACA trust unless the [PACA] trustee's transfer of funds to the third party constituted a breach of its duty as trustee to maintain trust assets." See American Banana, 362 F.3d at 41 (citing Restatement (Second) of Trusts § 283 (1959) ("If the trustee transfers trust property to a third person ... and the trustee in making the transfer ... does not commit a breach of trust, the third person holds the interest so transferred ... free of the trust, and is under no liability to the beneficiary." (emphasis added))). Thus, in the instant case, any possible liability of KCB as a third-party transferee must be predicated on a breach of trust by DLPS, the PACA trustee. Put another way, DLPS must have committed a breach of trust in depositing funds in its KCB account before KCB can legally be responsible for receiving those funds "in breach of trust."[7] Accordingly, in order to hold a bank in KCB's position liable for receiving any DLPS funds, we must first establish that DLPS's deposit of funds in its bank account constituted a breach of DLPS's duties as a PACA trustee.
 
 
 14
 We turn, therefore, to what constitutes a "breach of trust" by a produce dealer under PACA. In general, a "breach of trust" is "a violation by the trustee of any duty which as trustee he owes to the beneficiary." See id. (quoting Restatement (Second) of Trusts § 201 (1959) (internal quotation marks omitted)). Federal regulations prescribe the duties of produce dealers as PACA trustees, which consist primarily of "maintain[ing] trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities." 7 C.F.R. § 46.46(d)(1); see also American Banana, 362 F.3d at 41. The same regulation provides that "[a]ny act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of [PACA]." 7 C.F.R. § 46.46(d)(1); see also American Banana, 362 F.3d at 41. "Dissipation" that would constitute a breach of trust includes "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid suppliers, sellers, or agents to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2); see also American Banana, 362 F.3d at 41.
 
 II. District Court Opinion
 
 15
 The District Court adopted the holding and reasoning of its own earlier decision in American Banana, see E. Armata, slip op. at 10, in which the District Court had applied general trust principles to PACA trusts and concluded, as we have, see Discussion, Part I, ante, that the liability of a bank, as a third party, for receiving funds in breach of trust "is predicated on there having been a breach of the trust by [the trustee]," American Banana (S.D.N.Y.), slip op. at 13. Considering what constituted a breach of trust by a PACA trustee, the District Court in American Banana, and subsequently in the instant case, relied on the Ninth Circuit's decision in Boulder Fruit, and held that, because a produce dealer's trustee duties under PACA consist of "maintain[ing] trust assets in a manner that such assets are freely available to satisfy outstanding obligations to [PACA beneficiaries]," 7 C.F.R. § 46.46(d)(1), the produce dealer did not breach his duties as a PACA trustee merely by depositing funds into an account with a negative balance, as long as the funds remained "freely available" to repay trust beneficiaries. See E. Armata, slip op. at 10 (citing Boulder Fruit, 251 F.3d at 1272); American Banana (S.D.N.Y.), slip op. at 13 (same).
 
 
 16
 In order to identify any breach of the produce dealer's obligations as PACA trustee, the District Court considered in each case whether and which PACA funds deposited by the produce dealer remained "freely available" to repay PACA beneficiaries. Again relying on Boulder Fruit, which held that "no breach of the trust would have occurred" on the part of a PACA trustee if allegedly "misapplied" funds "were used to pay off other perishable commodities producers," 251 F.3d at 1272, the District Court in both American Banana and the instant case held that a produce dealer committed no breach of trust with respect to any funds that were ultimately disbursed to pay beneficiaries of the PACA trust. See E. Armata, slip op. at 10 (citing Boulder Fruit, 251 F.3d at 1272); American Banana (S.D.N.Y.), slip op. at 13 (same). In other words, evidence that deposited funds ultimately ended up in the hands of PACA creditors was sufficient to establish that those funds had been "freely available" to PACA creditors, and thus, that the produce dealer had satisfied its obligation as a PACA trustee with respect to those funds. In light of the District Court's previous holding that a third-party transferee's liability is predicated on a breach of trust by the PACA trustee, the Court proceeded to hold that KCB could not be liable as a third party for receipt of any funds that were eventually paid to PACA creditors, which includes the vast majority of the 2 million dollars deposited by DLPS. See E. Armata, slip op. at 10-11.
 
 
 17
 According to the District Court, therefore, the only funds with respect to which DLPS could have breached its obligations as a PACA trustee were those funds it deposited at KCB that were ultimately disbursed to non-PACA beneficiaries. See E. Armata, slip op. at 10-11. The District Court here, as it had in American Banana, thus held that banks in KCB's position could be liable for receipt of funds in breach of a PACA trust insofar as they received funds from a produce dealer that were ultimately disbursed to parties who were not PACA creditors. See id.; American Banana (S.D.N.Y.), slip op. at 14; American Banana v. Republic National Bank, No. 99 Civ. 1330(AGS), slip op. at 4-5 (S.D.N.Y. Sept. 17, 2002) (partially granting plaintiffs' motion to amend judgment to award damages not included in the original order). Applying this holding in the instant case, the District Court found that KCB's liability for receipt of funds in breach of trust included the $21,161.96 that DLPS paid to non-PACA creditors (not including KCB), as well as the $18,390.09 of fees and interest that KCB retained, for a total of $39,552.05. See E. Armata, slip op. at 10-11.[8]
 
 
 18
 III. KCB's Liability for Funds It Did Not Retain[9]
 
 
 19
 A. Funds Ultimately Disbursed to PACA Creditors
 
 
 20
 The District Court held that no breach of trust had occurred on the part of DLPS, and therefore on the part of KCB, with respect to funds that were ultimately disbursed to PACA creditors. See E. Armata, slip op. at 10-11. In so holding, the District Court relied on the Ninth Circuit's opinion in Boulder Fruit, see E. Armata, slip op. at 10, which had held that, in order for plaintiff PACA creditors to establish that trust assets had been misallocated, they had to demonstrate at a minimum that the trustee had not paid the funds in question to other PACA creditors, Boulder Fruit, 251 F.3d at 1272. Applying that holding to the instant case, the District Court rejected the argument of plaintiff PACA creditors that DLPS had dissipated the trust with respect to funds that were ultimately paid by DLPS to other PACA creditors. See E. Armata, slip op. at 10.
 
 
 21
 Although we agree with the District Court that, in the instant case, no breach occurred with respect to those funds that DLPS made available to PACA creditors after their deposit at KCB, we decline to adopt a blanket rule that a PACA trustee can commit "no breach ... with respect to ... funds" that are "eventually paid to PACA beneficiaries." E. Armata, slip op. at 10. As we conclude below, see Discussion, Part III.C., post, such a holding is not necessary, because the fact that DLPS did not breach its duties as PACA trustee by depositing funds at KCB is dispositive of plaintiffs' allegations that KCB received funds in breach of trust. Accordingly, although it seems correct to conclude that neither the PACA trustee in Boulder Fruit nor the PACA trustee in the instant case breached the trust with respect to the funds they ultimately paid to PACA creditors, we decline to hold, as a general matter, that no breach of a PACA trust could have occurred with respect to any funds that a PACA trustee eventually makes available to PACA creditors.
 
 
 22
 B. Funds Ultimately Disbursed to Non-PACA Creditors
 
 
 23
 Having concluded that KCB could not be liable for receiving funds that were ultimately disbursed to PACA creditors, the District Court seems to have assumed, without discussion, that KCB was liable in the full amount of those funds that were not ultimately disbursed to PACA creditors.[10] See E. Armata, slip op. at 10-11. That is, after the District Court determined the scope of DLPS's breach of its duties as a PACA trustee, excluding such a breach with respect to those funds that ended up in the hands of PACA creditors, the Court assumed that KCB was liable for the entire remainder of the funds at issue — the full amount DLPS eventually paid to non-PACA creditors.[11] Id. We conclude that the District Court erroneously omitted the step of considering the source of KCB's liability, if any, as a third-party transferee for receipt of PACA funds in breach of trust. Accordingly, we must determine whether KCB received funds from DLPS in breach of trust.
 
 
 24
 C. KCB's Liability for Receipt of Funds in Breach of Trust
 
 
 25
 As we have noted, see Discussion, Part I, ante, a third-party transferee's liability for receiving PACA funds "in breach of [a PACA] trust" is predicated on a transfer of those funds to the third party that itself constitutes a breach of trust on the part of the PACA trustee. See Restatement (Second) of Trusts § 283 (1959) ("Where Transfer Is Not In Breach of Trust: If the trustee transfers trust property to a third person ... and the trustee in making the transfer ... does not commit a breach of trust, the third person holds the interest so transferred ... free of the trust, and is under no liability to the beneficiary." (emphasis added)).
 
 
 26
 To hold, as the District Court did, that KCB is liable for receipt of PACA funds in breach of trust to any extent that the funds it received from DLPS were ultimately disbursed to non-PACA creditors illogically collapses the timeline relevant to the PACA trust, and thereby conflates several occasions of potential breach of the PACA trust. That is, the analysis conducted by the District Court does not distinguish between the questions whether DLPS initially breached the PACA trust by depositing funds at KCB and whether DLPS later breached the PACA trust by withdrawing funds by transferring them to non-PACA creditors. KCB's liability for receiving funds from DLPS "in breach of trust," however, depends not on DLPS breaching the trust by misallocating those funds at any time, but rather, on DLPS breaching the trust in depositing them with KCB.
 
 
 27
 Regardless of whether DLPS later breached its duty as trustee when it transferred PACA funds from the bank to non-PACA creditors, there is no evidence that its deposit of funds at KCB constituted a breach of trust. Indeed, no one disputes that, with the exception of the $18,390.09 retained by KCB in payment of interest and fees, which we discuss post, Discussion, Part IV, the funds DLPS deposited at KCB remained unencumbered and freely available for withdrawal by DLPS or its creditors.[12] Because DLPS's deposit of funds at KCB did not render the funds less "freely available" to its creditors, the deposit did not constitute a breach of DLPS's PACA obligations. See 7 C.F.R. § 46.46(d)(1); see also Discussion, Part I, ante. Accordingly, because DLPS committed no breach of trust by depositing PACA funds into a bank account in which they remained freely available for disbursement to creditors and withdrawal by DLPS, KCB cannot be liable for receiving such deposits from DLPS "in breach of trust." See Restatement (Second) of Trust § 283 (1959).
 
 
 28
 IV. KCB's Liability for Funds It Retained for Interest and Fees
 
 
 29
 As noted above, the only funds that were encumbered in any way upon their deposit at KCB were the $18,390.09 that KCB retained as payment for interest and fees associated with DLPS's checking account. In order to determine whether KCB is liable as a third-party transferee for receiving these funds "in breach of [a PACA] trust," we must first determine whether DLPS's transfer of $18,390.09 in interest and fees to KCB constituted a breach of its obligations as PACA trustee.[13] See Discussion, Part III.C, ante (citing Restatement (Second) of Trusts § 283 (1959)).
 
 
 30
 To consider this question, we turn again to the Ninth Circuit's decision in Boulder Fruit. In that case, PACA creditors alleged that a PACA trustee breached his PACA obligations by entering into a "factoring" agreement, or an agreement to "convert[] receivables into cash by selling them at a discount." Boulder Fruit, 251 F.3d at 1271 (citing Black's Law Dictionary (7th ed.1999)). Plaintiffs argued that selling trust assets at below their face value constituted per se breach of the PACA trust. Id. The Ninth Circuit disagreed, and held that "a commercially reasonable sale of accounts for fair value," even if less than face value, was "entirely consistent with the trustee's primary duty under PACA and 7 C.F.R. § 46.46(d)(1) — to maintain trust assets so that they are `freely available to satisfy outstanding obligations to sellers of perishable commodities.'" Id. The Court of Appeals further reasoned that "[t]he goal of PACA, after all, is ... to assure that growers are paid for their commodities." Id. Thus, as long as the assets remained "freely available," and the value received from the transaction was "commercially reasonable," a PACA trustee's entry into a factoring agreement that reduced the face value of trust assets did not constitute a breach of a PACA trust. Id. at 1271-72.
 
 
 31
 Recognizing that a PACA trustee's use of trust funds to conduct a commercial transaction with a third party does not constitute per se breach of trust under PACA, the Boulder Fruit Court noted, to the contrary, that such arrangements may facilitate the PACA dealer's payment of PACA creditors, which is the goal of PACA. Id. at 1271. We agree with the Ninth Circuit in Boulder Fruit, that it is not a breach of trust for a PACA dealer to use PACA funds to enter into "commercially reasonable" transactions with parties not protected by PACA, particularly where such transactions facilitate a PACA dealer's fulfillment of his obligations to PACA beneficiaries.
 
 
 32
 Applying that conclusion to the circumstances presented in the instant case, we hold that a PACA trustee's payment of interest and fees to maintain a checking account with overdraft privileges does not per se constitute breach of the PACA trust. A commercial banking relationship like the one at issue here is analogous to the factoring agreement considered by the Ninth Circuit in Boulder Fruit, in the sense that the maintenance of such a business relationship may be "entirely consistent" with a produce dealer's duties as a PACA trustee. Id.; see also American Banana, 362 F.3d at 42 ("Nor are we convinced that a trustee's payments of commercially reasonable fees and interest in exchange for routine banking services such as check cashing services and overdraft privileges extended to facilitate payments to beneficiaries necessarily constitute a breach of the PACA trust."). Like entering into a factoring agreement that is "commercially reasonable," Boulder Fruit, 251 F.3d at 1271, maintaining a checking account with "commercially reasonable" terms may facilitate, rather than impede, the fulfillment of a PACA trustee's duty "to maintain trust assets so that they are `freely available to satisfy outstanding obligations to sellers of perishable commodities,'" id. (quoting 7 C.F.R. § 46.46(d)(1)). Indeed, it is difficult to imagine how a PACA trustee would make funds available to its PACA creditors without entering into some such relationship with a bank. Accordingly, we hold that a PACA trustee's payment of "commercially reasonable" interest and fees to maintain a checking account in support of its duty to maintain trust assets as "freely available" to repay his PACA creditors does not constitute a breach of trust under PACA.
 
 
 33
 As well noted by the Ninth Circuit, "whether a particular... arrangement is commercially reasonable will depend upon its terms." Id. Considering the reasonableness of the factoring agreement before it in Boulder Fruit, that Court noted that the arrangement "actually enhanced the trust," in part because it "allowed [the produce dealer] to convert invoices that were not payable for 30 days ... into cash that [it] could have used to immediately pay growers." Id. at 1272. At first blush, it seems likely to us that DLPS's payment of $18,390.09 in interest and fees to KCB was "commercially reasonable" consideration for maintaining a checking account that facilitated approximately 2 million dollars of payments, primarily to PACA creditors, and for the extension of overdraft privileges that regularly allowed payment of PACA creditors in excess of DLPS's available funds. The facts may even permit a finding that this arrangement, like that in Boulder Fruit, "actually enhanced the trust" by making more funds available to PACA creditors than otherwise would have been. See id. However, because the District Court did not consider whether the checking account DLPS maintained at KCB was "commercially reasonable," and because we are not satisfied that the record is fully developed on this point, remand to the District Court is necessary for a determination of whether DLPS's banking arrangements with KCB were indeed "commercially reasonable."
 
 
 34
 If the District Court concludes that DLPS's banking relationship with KCB was "commercially reasonable," then DLPS's expenditures on interest and fees in maintenance of its checking account did not constitute a breach of its duties as a PACA trustee, and, consequently, KCB cannot be held liable as a third-party transferee for the funds it retained as fees and interest to maintain the account. If, on the other hand, the District Court concludes that DLPS's expenditures on the checking account were not "commercially reasonable," and that the payment of $18,390.09 in interest and fees therefore constituted a breach of DLPS's duty as a PACA trustee, then the Court should proceed to determine whether KCB is liable for receipt of those funds in breach of a PACA trust. Finally, if the District Court holds that the bank is liable for receipt of those funds in breach of a PACA trust, the Court must reconsider KCB's defenses to liability.[14]
 
 CONCLUSION
 In conclusion, we hold that:
 
 35
 (1) It is not the law of our Circuit that the fact that PACA funds ultimately ended up in the hands of PACA creditors compels the conclusion that the PACA trustee has not committed a breach of trust with respect to those funds.
 
 
 36
 (2) A bank that provides a checking account to a PACA trustee is not necessarily liable to trust beneficiaries where PACA funds held in that account are ultimately disbursed to non-PACA creditors, including the bank itself.
 
 
 37
 We further hold, with respect to a bank's liability for receipt of funds in breach of trust that were deposited in a PACA trustee's checking account:
 
 
 38
 (3) In order to demonstrate that a bank is liable to trust beneficiaries for receiving funds in breach of a PACA trust, the beneficiaries must first establish that the PACA trustee's deposit of such funds itself constituted a breach of trust.
 
 
 39
 (4) A PACA trustee's deposit of funds into a checking account, regardless of the balance, does not constitute a breach of a PACA trust if making such a deposit does not in any way encumber the funds or render them less "freely available" to PACA creditors.
 
 
 40
 Finally, with respect to deposited funds a bank retains in payment of interest and fees on a PACA trustee's account:
 
 
 41
 (5) The expenditure of trust funds by a PACA trustee to maintain a "commercially reasonable" banking arrangement does not breach the trustee's obligations under PACA.
 
 
 42
 (6) Whether a banking arrangement between a PACA trustee and a bank is "commercially reasonable" depends upon its terms.
 
 
 43
 Accordingly, we reverse the judgment of the District Court, and remand for the District Court to determine whether the terms of DLPS's banking arrangements with KCB were "commercially reasonable," and for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The District Court made extensive findings of fact, the bulk of which are not disputed on appealSee E. Armata, Inc. v. David Lee's Produce Service Corp., No. 99 Civ.2042(AGS), slip op. at 2-8 (S.D.N.Y. Dec. 30, 2002) ("E.Armata"); Appellants' Br. at 6; Appellee's Br. at 2. Accordingly, we merely summarize the District Court's findings relevant to this appeal.
 
 
 [2]
 In the agreement KCB agreed to honor checks only up to $90,000 in excess of available funds, but the bank occasionally honored checks that resulted in an even greater negative balance
 
 
 [3]
 Specifically, the District Court found that 95.8% of the approximately 2 million dollars deposited into the account came from PACA sources. Because of the overwhelming percentage of PACA-source deposits, and because the distinction between PACA-source and non-PACA-source deposits does not affect our current analysis, we do not distinguish between the source of funds when referring to DLPS's deposits into its KCB account
 
 
 [4]
 Appellants' arguments that the District Court's findings of fact with respect to the disposition of these funds were "clearly erroneous" are not persuasive
 
 
 [5]
 Specifically, the District Court held that KCB was only able to demonstrate that it had no "actual or constructive knowledge" of DLPS's difficulties in meeting its trustee obligations, which is required to mount a "bona fide purchaser" defense,see Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 615 (2d Cir.1998), during the period prior to October 1998, at which point the bank conducted a review of DLPS's finances. See E. Armata, slip op. at 11-12. Accordingly, the Court limited the bank's liability to funds it received in breach of trust after that date. Id.
 
 
 [6]
 7 C.F.R. § 46.46(d) provides, in pertinent part:
 (d) Trust Maintenance.
 (1) Commission merchants, dealers and brokers are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities. Any act or omission which is inconsistent with this responsibility, including dissipation of trust assets, is unlawful and in violation of Section 2 of the Act, 7 U.S.C. § 499b.
 
 
 [7]
 Of course, third-party recipients of trust funds such as KCB are not automatically liable if a plaintiff is able to establish a predicate breach on the part of a PACA trustee. Under general trust principles applicable to PACA cases, a breach of trust by the trustee is a necessary but not sufficient condition for a third-party transferee's liability to trust beneficiaries. In order for a third-party transferee to be liable to trust beneficiaries for receiving trust property, the transferee must also have had notice of the trustee's breach of trustSee Restatement (Second) of Trusts § 288 (1959) ("If the trustee in breach of trust transfers trust property to a person who takes with notice of the breach of trust, the transferee does not hold the property free of the trust...."). Moreover, third parties have available to them under PACA all the traditional defenses to liability that are available under general trust law.
 
 
 [8]
 The Court proceeded to narrow KCB's liability by accepting the bank's argument that it was a "bona fide purchaser" with respect to receiving trust funds during most of the relevant trust periodSee E. Armata, slip op. at 11-12 (citing Restatement (Second) of Trusts § 284(1) (1959)); see also Procedural History, ante; note 5, ante.
 
 
 [9]
 The District Court held that KCB's liability as a third-party transferee under PACA depends in part on the ultimate disposition of the funds it accepted as deposits into DLPS's checking accountSee E. Armata, slip op. at 11-12. Although we modify the District Court's holding, for ease of reference we organize our review according to the ultimate disposition of the funds.
 
 
 [10]
 One way to understand the District Court's error is in terms of formal logic, as an example of the common fallacy of "denying the antecedent." Robert M. Johnson, A Logic Book 30 (1992). Having determined that one conditional phrase was true — in this case, that, without trustee liability, there can be no third-party liability ("If not P, then not Q.") — the District Court appears to have held that that conditional phrase remains true if you replace each term with its negation ("If P, then Q.") —i.e., where there is trustee liability, there is third-party liability. Id. The substantive legal error of this reasoning is explained in note 7, ante.
 
 
 [11]
 We are not the first panel of our Court to note the logical leap in the District Court's argument, although we are the first to settle the issue raised thereby. Our Court has recently noted, in reversing on other grounds theAmerican Banana (S.D.N.Y.) decision relied upon by the District Court in this case, that on the issue of the bank's liability as a third-party transferee under PACA in the similar circumstances of that case, "the District Court appears to have assumed, without explanation, that [the bank] automatically shared [the PACA trustee's] liability for dissipating trust funds, apparently on the basis that the funds [the PACA trustee] paid to non-PACA creditors were withdrawn from an account at [the bank]." See American Banana v. Republic Nat'l Bank, 362 F.3d 33, 41 (2d Cir.2004).
 
 
 [12]
 Whether the balance in the account was positive or negative at the time of a particular deposit appears to have had no effect on whether the deposited funds were freely available for withdrawal. Accordingly, the balance in the account at the time of deposit has no effect on our determination whether DLPS breached the PACA trust by depositing funds at KCB
 
 
 [13]
 Again, this is not the only requirement for establishing KCB's liability as a third-party transferee, but it is asine qua non to establishing KCB's liability. See generally notes 7, 10, ante.
 
 
 [14]
 See generally Procedural History, ante; note 7, ante.